IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KEVIN CRAWFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-1046-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability benefits (SSD) and Supplemental Security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I. Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI on November 20, 2009, alleging disability beginning July 21, 2008. (R. 12, 133-40). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 12, 66-69, 83-84). Plaintiff's request was granted, and Plaintiff appeared with counsel for a video hearing before ALJ John B. Langland on July 14, 2011. (R. 12, 32-34).[2] At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 12, 32-57). On August 15, 2011 ALJ Langland issued his decision finding that although Plaintiff has shown that he cannot do his past relevant work, he is able to perform other jobs that exist in the national economy in significant numbers. (R. 12-24). Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and denied his applications. (R. 24-25). Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a Representative Brief to the Council. (R. 7-8, 273). The Council received and considered the Brief and made it a part of the administrative record in this case. (R. 1-5). However, the Council found that the Brief did not provide a basis for changing the ALJ's decision, found no reason under the rules of the Social Security Administration to review the decision, and denied Plaintiff's request for review. Id. Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v.

---

[2]The hearing transcript does not reveal the name of counsel who represented Plaintiff at the hearing. Nor does it record a formal entry of appearance by counsel. But, the ALJ stated that "claimant and his attorney are appearing by video from Joplin, Missouri" (R. 34), and the transcript reveals an opening statement and questioning by a representative. (R. 35, 43-49). Moreover, the decision states that "claimant is represented by Ashley Baines, an attorney." (R. 12).

Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2011);[3] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

---

[3]The Commissioner's decision in this case was issued on August 15, 2011, and, unless otherwise noted all citations to the Code of Federal Regulations in this opinion refer to the 2011 edition of 20 C.F.R. Parts 400 to 499, Revised as of April 1, 2011.

Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims only that the ALJ failed to provide a narrative discussion of his RFC assessment in accordance with the requirements of Social Security Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 143-51 (Supp. 2012), and thereby committed reversible error by providing an arbitrary RFC. (Pl. Br. 8-16). The

Commissioner argues that the ALJ properly applied SSR 96-8p, and that the "Findings of Fact and Conclusions of Law" in the decision contain the narrative discussion required by the SSR. (Comm'r Br. 9-17). The court agrees with the Commissioner that the ALJ properly applied SSR 96-8p and provided an adequate narrative discussion.

## III.   Discussion

### A.   The ALJ's Findings

At steps two and three of the sequential evaluation process, the ALJ found that Plaintiff has severe impairments including shoulder impingement, obesity, sleep apnea, degenerative disc disease, depression with mild psychotic features, and anxiety disorder, and that the severity of the impairments, even in combination, do not meet or medically equal the severity of a Listed Impairment. (R. 14-16). In assessing RFC, the ALJ summarized the record evidence, including: Plaintiff's allegations, in his testimony and in the documents he completed, regarding symptoms resulting from his impairments; Plaintiff's treatment records from Crossroads Counseling Center, Community Mental Health Center of Crawford County, the Behavioral Health Clinic, and Community Health Center of Southeast Kansas; treatment provided by nurse-practitioners Sandra Anderson and Cheryl Rajotte, and a consultative psychological examination performed by a psychologist, Dr. Hough. The ALJ considered, summarized, and accorded weight to the opinions of Ms. Anderson, Ms. Rajotte, Dr. Hough, Dr. Siemsen (a state agency medical doctor who reviewed and affirmed the opinion of an agency single decisionmaker), and two state agency psychologists, Dr. Blum and Dr. Cohen. He accorded "little weight" to

6

the nurse-practitioners' opinions, agreed with Dr. Hough's opinion, accorded "substantial weight" to Dr. Siemsen's opinion, and agreed with and accorded "substantial weight" to the opinions of the state agency psychologists. The ALJ found that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms are not credible. He concluded that Plaintiff has the RFC to perform a range of "light work" as defined in the regulations, limited by significant postural and mental limitations. (R. 16-23).

Based upon the RFC assessed, the ALJ determined that Plaintiff is unable to perform his past relevant work but is able to perform other work in the economy. Consequently, he determined that Plaintiff is not disabled within the meaning of the Act, and denied his applications for benefits. (R. 23-25).

### B.     The Applicable Legal Standard

As Plaintiff argues, SSR 96-8p includes narrative discussion requirements for an RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2012). The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. The narrative discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities. Id. at

7

149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150.

### C.     Analysis

Here, Plaintiff asserts that "[t]he RFC is not explicitly related to any specific medical evidence or testimony," and that the ALJ did not "provide any type of reasonable narrative discussion as to how the medical evidence supports his arbitrary conclusions." (Pl. Br. 10). In support of this argument, Plaintiff quotes the ALJ's RFC assessment--finding number 5 in the decision. Id. (quoting R. 16). However, Plaintiff essentially ignores the ALJ's complete discussion wherein he explains how he arrived at the RFC assessment. (R. 16-23). This is the narrative discussion required by SSR 96-8p in which the ALJ related his RFC assessment to the medical evidence and to the record testimony. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69). The narrative discussion required by SSR 96-8p does not require citation to a medical opinion, or even to medical *evidence* in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). That is what the ALJ did here.

8

Plaintiff notes that the ALJ accorded substantial weight to Dr. Siemsen's opinion and argues that Dr. Siemsen's opinion is inconsistent with the ALJ's assessment because Dr. Siemsen's opinion was formulated before Plaintiff was diagnosed with shoulder impingement, obesity, or sleep apnea, and contains no mention of any of those impairments. (Pl. Br. 12). Plaintiff misses the significance of the fact that it is the <u>ALJ's</u> duty to consider all of the record evidence and incorporate that consideration into the RFC assessment. As noted above, the ALJ is not required to cite to a medical opinion or medical evidence for each limitation assessed. Even though Dr. Siemsen's opinion did not mention any of these impairments, the ALJ's assessment did. Although the ALJ accorded substantial weight to Dr. Siemsen's opinion, he did not adopt the opinion as his own, and his RFC assessment was not based solely on Dr. Siemsen's opinion. As Plaintiff admits (Pl. Br. 12), the ALJ found each of the allegedly unconsidered impairments to be "severe," and he considered and discussed each of them in his RFC assessment. (R. 14-21, <u>passim</u>). It is Plaintiff's burden to prove limitations resulting from his impairments, and he points to no record evidence which was ignored, misinterpreted, or misunderstood by the ALJ, and which suggests that these impairments cause greater limitations than those assessed by the ALJ.

The ALJ accorded "little weight" to nurse-practitioner Anderson's opinion because it was not supported by narrative explanation, by citation to objective evidence, or by the record medical evidence. (R. 22). Plaintiff argues that the ALJ erred in this rationale because the treatment notes report visual and auditory hallucinations, anxiety, depression,

9

and racing thoughts, and Ms. Anderson opined that Plaintiff had marginal judgment and marginal insight regarding his disorders. (Pl. Br. 13-14). Plaintiff has shown no error in the ALJ's consideration. In the first place, as the ALJ noted there is absolutely no narrative explanation or citation to record evidence included by Ms. Anderson in either of her "Medical Source Statements" to explain the limitations assessed. Thus, the statements are bare opinions without explanation or support. Moreover, the court agrees with the ALJ that neither Ms. Anderson's treatment records (R. 17-18) nor the record evidence (R. 22) supports the number of marked and moderate limitations opined by Ms. Anderson.

As Plaintiff's argument suggests, the treatment notes contain four mentions of visual hallucination. (R. 287, 290, 294, 297). However, two of these instances appear in the "Intake Summary" of plaintiff's treatment at Community Mental Health on December 4, 2009 (R. 294, 297), one appears in the "New Patient Initial Evaluation" on December 15, 2009 (R. 290), and one appears in the very first "Follow-up Progress Note" dated December 30, 2009. (R. 287). In every instance, the reference to visual hallucinations is based upon Plaintiff's report, and he reports seeing only shadows, out of the corner of his eye, or more substantial things which seem to disappear when he explores their source. Thereafter, the progress reports reveal that Plaintiff denies visual hallucinations and reports hearing voices or sounds only intermittently and which are not bothersome. (R. 281-86, 387-98, 476-96). Moreover, the ALJ found Plaintiff's allegations of symptoms are not credible, a finding which Plaintiff does not dispute, and as the ALJ noted, Dr.

Hough observed symptom magnification during his examination of Plaintiff, and noted that Plaintiff was evasive in explaining his report of hallucinations. (R. 356). Plaintiff has not shown that it was error to discount Plaintiff's reports of visual hallucinations or of debilitating auditory hallucinations. Further, since the ALJ accorded "little weight" to Ms. Anderson's opinion, he need not have accepted her opinion that Plaintiff has marginal judgment or insight. Again, Plaintiff points to no record evidence which suggests that these symptoms cause greater limitations than those assessed by the ALJ. The court finds no error in the ALJ's consideration.

In his final argument, Plaintiff implies it was error for the ALJ to accord "substantial weight" to Dr. Blum's opinion or to agree with Dr. Hough's opinion, because those doctors reviewed only two medical records which addressed Plaintiff's mental health issues. (Pl. Br. 15-16). Again, Plaintiff misses the significance of the fact that it is the <u>ALJ's</u> duty to consider all of the record evidence and incorporate that consideration into the RFC assessment. Plaintiff does not point to record evidence which was ignored by the ALJ or (other than properly discounted opinion evidence) which reflects greater limitations than those assessed by the ALJ.

The essence of Plaintiff's argument is that the ALJ should have accorded greater weight to the opinions of his treating nurse-practitioners than to the opinions of the nontreating and nonexamining physicians and psychologists. In his brief, he summarized the opinion evidence and the ALJ's explanations for the weight accorded each opinion. However, he did not explain how or why the nurse-practitioners' opinions <u>must</u> be given

11

greater weight, or point to reasons the ALJ gave for discounting the nurse-practitioners' opinions which are not supported by the record evidence. He does not point to reasons given by the ALJ for according weight to the opinions of the nontreating and nonexamining physicians and psychologists which are erroneous as a matter of law or are not supported by record evidence. In effect, he is merely asking the court to reweigh the opinion evidence. That it may not do.

The ALJ applied the correct legal standard for assessing RFC, and the decision contains the narrative discussion required by SSR 96-8p. Moreover, despite the implications of Plaintiff's Brief, he does not specifically allege, and he certainly does not demonstrate, error in the ALJ's evaluation of the opinion evidence. Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 25th day of February 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**